IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GIANT EAGLE, INC., a Pennsylvania corporation; and TOPCO ASSOCIATES, LLC, a Delaware limited liability company, | ) ) ) Civil Action No. 06-03523 |
| Plaintiffs, | ) ) The Honorable Thomas O'Neill |
| v. | ) ) |
| EASTERN MUSHROOM MARKETING COOPERATIVE, INC., PHILLIPS MUSHROOM FARMS L.P., KAOLIN MUSHROOM FARMS, INC., SOUTH MILL MUSHROOM SALES, INC., GIORGI MUSHROOM CO., GIORGI FOODS, INC. MONTEREY MUSHROOMS, INC., FRANKLIN FARMS, INC., MODERN MUSHROOM FARMS, INC., SHER-ROCKEE MUSHROOM FARMS, LLC, C & C CARRIAGE MUSHROOM CO., CARDILE MUSHROOMS, INC., CARDILE BROS. MUSHROOMS PACKAGING, INC., GINO GASPARI & SONS, INC. and/or GASPARI BROS., INC., OAKSHIRE MUSHROOM FARM INC., BROWNSTONE FARMS, INC. and/or BROWNSTONE MUSHROOM FARM and/or BROWNSTONE MUSHROOMS, LLC, TO-JO FRESH MUSHROOMS, INC. and/or TO-JO MUSHROOMS, INC., ROBERT A. FERRANTO JR. t/a BELLA MUSHROOM FARMS, COUNTRY FRESH MUSHROOM CO., FOREST MUSHROOM INC., LRP MUSHROOMS, INC. and/or LRP MUSHROOMS, LLC, LEONE PIZZINI & SON, INC., HARVEST FRESH FARMS, INC., KITCHEN PRIDE MUSHROOMS, INC. and/or KITCHEN PRIDE MUSHROOM FARMS, INC., LOUIS M. MARSON JR., INC., MARIO CUTONE MUSHROOM CO. INC. and/or M. CUTONE MUSHROOM CO., M.D. BASCIANI & SONS, INC., MASHA & TOTO, INC., t/a M & T MUSHROOMS, MUSHROOM ALLIANCE, UNITED MUSHROOM FARM COOPERATIVE, INC. and/or UNITED MUSHROOM FARM COOP, INC., W & P MUSHROOM INC., J-M FARMS, INC., CREEKSIDE MUSHROOMS LTD., JOHN PIA, MICHAEL PIA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiffs, Giant Eagle, Inc. ("Giant Eagle") and Topco Associates, LLC ("Topco")
complain against the above-named Defendants and, in support thereof, allege as follows:

## NATURE OF THE ACTION

1.      This antitrust action arises from Defendants' conspiracy to curtail the supply of
agaricus mushrooms in the United States by purchasing mushroom farms operated by their
competitors, permanently shutting them down, and entering into agreements prohibiting future
use of those farms for growing mushrooms.  These acts eliminated 42 million pounds of annual
supply and permitted Defendants to sell mushrooms to Plaintiffs and others at higher prices than
they could have charged in an unrestrained market.  On December 16, 2004, the United States
Department of Justice filed a lawsuit challenging Defendants' conspiracy as a violation of
Section 1 of the Sherman Act and on the same day a proposed consent decree was filed requiring
Defendants to cease their unlawful acts.  Defendants' conspiracy and their acts pursuant thereto
were in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Section 7 of the
Clayton Act, 15 U.S.C. § 18, and Ohio's Valentine Act, Ohio Rev. Code §§1331.01, 1331.04-06,
and 1331.08, and Plaintiffs have been injured in their business and property as a result of those
violations.

2.      As alleged below, each year American consumers spend over $800 million on
mushrooms, the vast majority of which are fresh agaricus mushrooms, the common table variety.
During all relevant times, the EMMC members controlled over 60 percent of all agaricus
mushrooms grown in the United States and approximately 90 percent of all agaricus mushrooms
grown in the eastern United States.

3.      Beginning in January 2001, the EMMC and its members undertook a wide-ranging conspiracy to inflate the average prices for agaricus mushrooms by at least 8 percent around the country.  In May 2001, the EMMC and its members began to collectively conduct a "Supply Control" campaign to impede and forestall competition from independent, non-EMMC farmers, thereby eliminating the restraints on inflated prices that result from unfettered competition.  The EMMC and its members implemented their scheme through a number of different acts, including the elimination of a significant amount of the supply from competing mushroom growers.  In May 2001, the EMMC, which was at all times acting as an agent of its members, bought four mushroom farms with an annual combined growing capacity of approximately 29 million pounds.  The EMMC then resold the four properties at a combined total loss of over $1.2 million and placed permanent deed restrictions on the properties at the time of each resale.  The deed restrictions all prohibited the conduct of any business related to the growing of mushrooms.  For example, one deed restriction read:  "This property shall never be used for the cultivation, growing, marketing, sale or distribution of fresh mushrooms, canned and/or processed mushrooms or related endeavors."

4.      Similarly, in February and August 2002, the EMMC purchased lease options, at a cost of over $1 million, on two additional mushroom farms with a combined annual growing capacity of approximately 14 million pounds.  The lease options allowed the EMMC to file deed restrictions on the two properties prohibiting the use of the properties for any business related to growing mushrooms for a period of 10 years.  The EMMC never entered into leases on these farms, but did file the deed restrictions.  No mushrooms have been grown on the properties that the EMMC bought and leased since the deed restrictions were imposed by the EMMC.  The EMMC and its members also bought one or more mushroom farms in Texas to remove the mushroom supply from those farms.

5.      By imposing deed restrictions on the properties described above, the EMMC and its members were able to substantially reduce the amount of land that was available in the United States for mushroom production.  Indeed, the EMMC touted the success of the Supply Control campaign to its membership, claiming that it had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production."  By reducing the amount of the land and facilities that were available to produce mushrooms in the United States, the EMMC and its members were able to maintain artificial price increases for mushrooms of at least 8%.

6.      In addition to the property transactions and deed restrictions to restrain mushroom supply, the EMMC members supported and reinforced their scheme by: (a) collectively interfering with any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (b) using collective and conspiratorial acts to pressure independent growers to join the EMMC and Defendants' anticompetitive scheme.

7.      The purpose and effect of the above conspiracy by the EMMC and its members was to: (a) artificially reduce the supply of fresh mushrooms for American consumers, and (b) maintain artificially-inflated mushroom prices.  The anticompetitive effects from the conspiracy by the EMMC members (in terms of reduced mushroom supply and artificially-inflated mushroom prices) continue to date.

## THE PARTIES

8.      Plaintiff Giant Eagle is a Pennsylvania corporation with its principal offices located at 101 Kappa Drive, Pittsburgh, Pennsylvania.  Giant Eagle is engaged in the retail grocery supermarket business and, by itself and through its subsidiaries, owns, operates, and licenses over 200 Giant Eagle® supermarkets in Pennsylvania, Ohio, West Virginia, and Maryland.  Giant Eagle annually purchases nearly $7 million of fresh and canned mushrooms for

resale to the public.  Most, if not all, of these mushrooms are purchased from the Eastern Mushroom Marketing Cooperative ("EMMC") and its members through Topco, a buying cooperative, of which Giant Eagle is a member.

9.      Plaintiff Topco is a Delaware limited liability company with its principal offices located at 7711 Gross Point Road, Skokie, Illinois.  Topco is a buying cooperative that provides procurement, quality assurance, packaging, and other services for its member-owners which include supermarket retailers, wholesalers, and food service companies.  As a privately–held cooperative, Topco has no conflicting profit motive because it distributes substantially all of its earnings back to its member-owners based on each member's level of participation.  Giant Eagle is a member of Topco and, accordingly, at all times relevant hereto, Topco acted on behalf of Giant Eagle and other Topco members in purchasing mushrooms from Defendants for resale to the public.

10.      Defendant EMMC began operations in January 2001, and is the largest mushroom cooperative in the United States.  EMMC is incorporated in the Commonwealth of Pennsylvania and is headquartered in Kennett Square, Pennsylvania.  EMMC is made up of entities that grow, buy, package, and ship mushrooms to retail and food service outlets across the United States.  On information and belief, one or some of the EMMC members are not "farmers" within the meaning of the Capper-Volstead Act ("Capper-Volstead"), 7 U.S.C. § 291 *et seq.*  During the 2001-2002 growing season, EMMC had approximately 19 members with control of more than 500 million pounds of mushrooms which are valued in excess of $425 million. EMMC sets the minimum prices at which its members sell their mushrooms to customers in various geographic regions throughout the United States and publishes those prices regularly.

11.     Defendant Phillips Mushroom Farms, L.P. ("Phillips") is a mushroom grower with its principal offices located in Kennett Square, Pennsylvania. Phillips was an EMMC member at all relevant times. As of December 2002, Phillips was the largest supplier of specialty mushrooms in the United States, selling 35 million pounds of mushrooms annually. Phillips distributed mushrooms throughout the eastern United States. Phillips was an EMMC member at all relevant times, and participated in the improper conduct alleged herein.

12.     Defendant Kaolin Mushroom Farms, Inc. ("Kaolin") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and whose principal office is located in Kennett Square, Pennsylvania. Kaolin was an EMMC member at all relevant times and operates one of the largest mushroom farms in Pennsylvania and transacts business in this district. During all relevant times Kaolin sold mushrooms to retail, wholesale, food service and commercial processors, under the South Mill label. Kaolin participated in the improper conduct alleged herein.

13.     Defendant South Mill Mushroom Sales, Inc. ("South Mill") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Kennett Square, Pennsylvania and is believed to be related through common ownership to Kaolin. On information and belief, South Mill participated with Kaolin in the improper conduct alleged herein.

14.     Defendants Giorgi Mushroom Co. and Giorgi Foods, Inc. (collectively "Giorgi") are corporations organized and existing under the laws of the Commonwealth of Pennsylvania with an address of P.O. Box 96, Temple, PA 19560. Giorgi was an EMMC member at all relevant times, and participated in the improper conduct alleged herein.

15.     Defendant Monterey Mushrooms, Inc. ("Monterey") has its principal offices in Watsonville, California.  Monterey is a national grower and shipper of mushrooms with a full line of fresh domestic and specialty mushrooms which it sells to supermarkets, foodservice and ingredient manufacture operations, and for preparation of processed, canned, and frozen mushroom products.  Monterey is the largest grower/shipper and marketer of fresh mushrooms in the United States, with farms in Florida, Illinois, California, Texas, Tennessee, and Pennsylvania.  In addition, Monterey also sells processed mushrooms that are canned, frozen, and glass-jarred, which it processes at facilities and plants in Missouri, California, Pennsylvania, Indiana and Texas. Monterey was an EMMC member at all relevant times, and participated in the improper conduct alleged herein.

16.     Defendant Franklin Farms, Inc. ("Franklin") is a mushroom grower with its principal offices in North Franklin, Connecticut.  Franklin is the nation's largest grower and harvester of certified organic mushrooms, and one of the largest agricultural businesses in New England. On information and belief, Franklin was an EMMC member from the inception of the EMMC until September 1, 2003 when it resigned but once again became an EMMC member on February 14, 2006.  Franklin participated in the improper conduct alleged herein.

17.     Defendant Modern Mushroom Farms, Inc. ("Modern") is a mushroom grower with its principal offices in Toughkenamon, Pennsylvania.  Modern grows and sells agaricus mushrooms under the Modern Mushroom Farms label.  Modern is presently and was a member of the EMMC at all relevant times, and participated in the improper conduct alleged herein.

18.     Defendant Sher-Rockee Mushroom Farms, LLC ("Sher-Rockee"), is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Lincoln University, Pennsylvania, and is related through common

ownership to Modern.  On information and belief, Sher-Rockee participated with Modern in the improper conduct alleged herein.

19.     Defendant C & C Carriage Mushroom Co. ("C & C") is a business corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located in Toughkenamon, Pennsylvania, and is wholly owned by Modern.  On information and belief, C & C participated with Modern in the improper conduct alleged herein.

20.     Defendant Cardile Mushrooms, Inc. is a mushroom grower with its principal offices in Avondale, Pennsylvania.  Defendant Cardile Brothers Mushroom Packaging, Inc. is a Pennsylvania business corporation that packages, sells and distributes mushrooms with its principal offices in Avondale, Pennsylvania. Both Cardile Mushrooms, Inc. and Cardile Brothers Mushroom Packaging, Inc. (collectively "Cardile") are owned and operated by Michael P. Cardile Sr. and Charles Cardile.  Cardile was an EMMC member at all relevant times and during the time that EMMC was implementing the Supply Control campaign.  It participated in the improper conduct alleged herein.

21.     Defendants Gino Gaspari & Sons, Inc. and/or Gaspari Bros., Inc. (collectively "Gaspari") are corporations organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Temple, Pennsylvania.  On information and belief, Gaspari is and was a member of the EMMC at all relevant times, and participated in the improper conduct alleged herein.

22.     Defendant Oakshire Mushroom Farm Inc. ("Oakshire") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Kennett Square, Pennsylvania.  On information and belief, Oakshire is and has been at all relevant times a member of the EMMC, and participated in the improper conduct alleged herein.

23.     Defendant Brownstone Farms, Inc. and/or Brownstone Mushroom Farm and/or Brownstone Mushrooms, LLC ("Brownstone") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Hanover, Pennsylvania, or, in the alternative, in Avondale, Pennsylvania.  On information and belief, Brownstone is and has been at all relevant times a member of the EMMC, and participated in the improper conduct alleged herein.

24.     Defendant To-Jo Fresh Mushrooms, Inc. and/or To-Jo Mushrooms, Inc. ("To-Jo") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Avondale, Pennsylvania and is related to and controlled by Brownstone.  On information and belief, To-Jo participated in the improper conduct alleged herein.

25.     Defendant Robert A. Ferranto Jr. t/a Bella Mushroom Farms ("Bella") is an individual with a business address of R.R. 1, Box 165B, Landenberg, Pennsylvania 19350.  On information and belief, Bella is and has been a member of the EMMC since December 13, 2005, and participated in the improper conduct alleged herein.

26.     Defendant Country Fresh Mushroom Co. ("Country Fresh") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Avondale, Pennsylvania.  On information and belief, Country Fresh is and has been a member of the EMMC since September 26, 2002, and participated in the improper conduct alleged herein.

27.     Defendant Forest Mushroom, Inc. ("Forest Mushroom") is a corporation whose principal office is located in Saint Joseph, Minnesota.  On information and belief, Forest Mushroom has been a member of the EMMC since the EMMC's inception, and participated in the improper conduct alleged herein.

8

28.     Defendants LRP Mushrooms, Inc. and LRP Mushrooms, LLC (collectively "LRP"), with a principal place of business at 137 Starr Road, Avondale, Pennsylvania 19311, and Leone Pizzini & Son, Inc. ("Pizzini"), a Pennsylvania corporation with a principal place of business in Landenberg, Pennsylvania are all related through common ownership.  On information and belief, LRP is and has been a member of the EMMC since the EMMC's inception and Pizzini was an EMMC member from February 4, 2001 through September 1, 2004. On information and belief, LRP and Pizzini participated in the improper conduct alleged herein.

29.     Defendant Harvest Fresh Farms, Inc. ("Harvest Fresh") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in Shoemakersville, Pennsylvania.  On information and belief, Harvest Fresh was a member of the EMMC from the EMMC's inception until September 1, 2004, and participated in the improper conduct alleged herein.

30.     Defendant Kitchen Pride Mushrooms, Inc. and/or Kitchen Pride Mushroom Farms, Inc. ("Kitchen Pride") is a corporation with an address of P.O. Box 585, Gonzalez, Texas 78629.  On information and belief, Kitchen Pride was an EMMC member from January 9, 2001 through September 1, 2001.  Upon information and belief, Kitchen Pride also participated through the Mushroom Alliance in the improper conduct alleged herein.

31.     Defendant Louis M. Marson Jr., Inc. ("Marson") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 459 Greenwood Road, Kennett Square, Pennsylvania 19348.  On information and belief, Marson was an EMMC member from January 9, 2001 through September 1, 2005, and participated in the improper conduct alleged herein.

9

32.     Defendant Mario Cutone Mushroom Co., Inc. and/or M. Cutone Mushroom Co. ("Cutone") is a corporation with a place of business in Chelsea, Pennsylvania, or, in the alternative, in Avondale, Pennsylvania.  On information and belief, Cutone was a member of the EMMC from January 20, 2001 through September 1, 2002, and participated in the improper conduct alleged herein.

33.     Defendant M.D. Basciani & Sons, Inc. ("Basciani") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 8874 Gap Newport Pike, Avondale, PA 19311.  On information and belief, Basciani was a member of the EMMC from January 9, 2001 through September 1, 2004, and participated in the improper conduct alleged herein.

34.     Defendant Masha & Toto, Inc., t/a M & T Mushrooms ("M & T") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 519 Hillendale Road, Avondale, Pennsylvania 19311.  On information and belief, M & T was an EMMC member from January 26, 2001 through September 1, 2001, and participated in the improper conduct alleged herein.

35.     On information and belief, Defendant Mushroom Alliance, Inc. ("Mushroom Alliance") is an agricultural cooperative incorporated in Washington.  Its designated registered agent is CT Corporation System, 520 Pike Street, Seattle, Washington 98101. On information and belief, Mushroom Alliance was an EMMC member from January 9, 2001 through September 1, 2001, and participated in the improper conduct alleged herein.

36.     Defendant United Mushroom Farm Cooperative, Inc. and/or United Mushroom Farm CoOp, Inc. ("United") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 101 New Garden Road, Avondale, PA 19311.

On information and belief, United was a member of the EMMC from April 7, 2003 through September 1, 2005, and participated in the improper conduct alleged herein.

37.     Defendant W & P Mushroom Inc. ("W & P") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Oxford, Pennsylvania.  On information and belief, W & P was a member of the EMMC from September 4, 2002 through September 1, 2004, and participated in the improper conduct alleged herein.

38.     Defendant J-M Farms, Inc. is a member of the Mushroom Alliance. Its principal place of business is in Miami, Oklahoma. On information and belief, J-M Farms participated through the Mushroom Alliance in the improper conduct alleged herein.

39.     Defendant Creekside Mushrooms Ltd. ("Creekside") is a member of the Mushroom Alliance. Its principal place of business is in Worthington, Pennsylvania. On information and belief, Creekside participated through the Mushroom Alliance in the improper conduct alleged herein.

40.     Defendant John Pia was one of the founders and president of EMMC, and is the Chief Executive Officer of Kaolin Mushroom Farms, Inc., which is one of EMMC's members.

41.     Defendant Michael Pia is an individual citizen and resident of the state of Pennsylvania.  Michael Pia was an officer of EMMC, and as such was directly responsible for its anticompetitive practices.

## JURISDICTION AND VENUE

42.     This action is brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and the Ohio Valentine Act, Ohio Rev. Code §§ 1331.01, 1331.04-06, and 1331.08, to recover treble damages and costs of suit, including reasonable attorneys' fees, for injuries to Plaintiffs in the form of overcharges resulting from Defendants' unlawful anticompetitive conduct.

43.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331, 1337, and 1367 and 15 U.S.C. § 15.

44.     Venue is proper in the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1391 and 15 U.S.C. § 22 because: (i) Defendants transact business, committed an illegal act, and/or are found within that district; and (ii) a significant portion of the affected trade and commerce described below has been carried out in that district. In addition, Plaintiff Giant Eagle is located in that district. *See* Brief in Opposition to Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed on May 22, 2006 in the Western District of Pennsylvania. While Chief Judge Donetta Ambrose of the United States District Court for the Western District of Pennsylvania ordered transfer of this case to this Court pursuant to 28 U.S.C. § 1404(a), Plaintiffs intend to seek transfer of this case back to the Western District of Pennsylvania for trial.

## INTERSTATE TRADE AND COMMERCE

45.     At all times relevant hereto, Defendants each grew and sold substantial amounts of agaricus mushrooms in a continuous and uninterrupted flow of commerce across state lines and throughout the United States—including Ohio.

46.     At all material times, agaricus mushrooms grown and sold by Defendants were shipped across state lines and sold to customers located outside the state where they were grown.

47.     At all times relevant hereto, Defendants transmitted funds as well as contracts, invoices and other forms of business communications and transactions in a continuous and uninterrupted flow of commerce across state and national lines in connection with the sale of agaricus mushrooms.

48.     Defendants employed, in furtherance of their unlawful agreement to restrict the supply of mushrooms, the United States mails and interstate and international telephone lines, as well as means of interstate and international travel.

49.     Each Defendant, in furtherance of their unlawful conspiracy to restrict the supply of mushrooms, committed illegal acts within and outside of the State of Ohio.

50.     The illegal agreement to restrict the supply of mushrooms and to suppress competition for agaricus mushrooms alleged herein has substantially affected interstate and foreign commerce.

51.     The illegal conduct alleged herein has substantially affected interstate and foreign commerce.  It also had a substantial effect on commerce within the State of Ohio.

## THE RELEVANT MARKET

52.     Agaricus mushrooms are the common table variety, accounting for the vast majority of mushrooms grown and sold in the United States.  In 2002, domestic sales of all mushrooms were over $800 million.  EMMC members accounted for over 60 percent of those sales.

53.     Mushrooms are grown on farms, usually in one-story windowless cinder block buildings called "doubles."  Doubles are kept cool and dark at an optimum ground temperature of 64 degrees year round.  Mushrooms are grown in stacks of beds, usually six beds to a stack and 24 beds to a double.  The growing process takes approximately eight weeks to harvest from the introduction of mushroom seed, or "spawn" into the growing medium, usually compost.  Once harvested, mushrooms are usually kept in refrigerated storage on the farms until packaged and shipped in refrigerated trucks to customers.

54.     Agaricus mushrooms of better quality are sold to fresh market retailers such as grocery store chains and food distributors.  Lesser quality agaricus mushrooms are often sold as canned mushrooms.  The majority of the agaricus mushrooms grown by EMMC members are sold as fresh.

55.     According to the U.S. Department of Agriculture, approximately 66 percent of the domestic agaricus mushrooms grown in the United States are grown in the eastern United States, with 55 percent grown in Pennsylvania.  Fresh market mushroom prices historically have been lowest in the east, and some fresh mushrooms grown in the eastern United States are shipped west.

## DEFENDANTS' UNLAWFUL CONSPIRACY
## TO RESTRICT THE SUPPLY OF MUSHROOMS

56.     Shortly after its formation, in January 2001, EMMC and its members agreed to set increased minimum prices at which they would sell mushrooms in six different geographic regions, covering the entire continental United States—including Ohio.  The minimum prices they agreed to were, on average, 8% higher than the prices prevailing in those regions prior to EMMC's formation.  The price increases resulted in an increase of the price of agaricus mushrooms at all times relevant hereto.

57.     EMMC controlled over 60 percent of all agaricus mushrooms grown in the United States during the 2001-2002 growing season and approximately 90 percent of all agaricus mushrooms grown in the eastern United States during the same growing season.

58.     In order to support and maintain the artificial price increases, the Defendants eliminated competing mushroom supply, which could otherwise force down the artificially-increased prices.  Within three months of instituting the price increases, the Defendants launched a campaign to control the mushroom supply by acquiring and subsequently dismantling non-

14

EMMC mushroom growing operations. These actions did not serve, nor were they intended to serve, any legitimate or lawful purpose.

59.     Depending on the size and location, building a new mushroom growing and production facility costs millions of dollars and generally requires zoning approval. Building a new facility takes much longer to generate any revenue than purchasing or leasing an existing growing operation. By eliminating the existing available productive capacity, the Defendants substantially reduced and impeded the existence of current competition and substantially forestalled and delayed the entry of new competitors and/or the expansion of existing competitors.

60.     Through membership dues and a "Supply Control Assessment" EMMC collected approximately $6 million from its members during 2001 and 2002. EMMC, acting as an agent of its members, then spent approximately $3 million to purchase four mushroom farms and to acquire lease options on two additional mushroom farms in the eastern United States for the purpose of shutting them down and reducing the mushroom production capacity available for nonmembers to grow mushrooms in competition with the Defendants.

61.     In May 2001, EMMC purchased a farm in Dublin, Georgia at a bankruptcy auction. The Dublin farm had an annual mushroom production capacity of approximately eight million pounds. At the auction, EMMC outbid a non-EMMC mushroom grower based in Colorado that was attempting to enter mushroom farming in the eastern United States in competition with EMMC. Three months later, EMMC entered into a land exchange with a land developer not connected to the mushroom industry, in which EMMC exchanged the Dublin farm for another mushroom farm consisting of two parcels in Evansville, Pennsylvania, plus cash. As part of the exchange, EMMC placed a permanent deed restriction on the Dublin farm prohibiting

the conduct of any business related to the growing of mushrooms.  EMMC lost approximately $525,000 on the Dublin farm purchase and exchange transactions.

62.    Within three months of the Dublin farm/Evansville land exchange, EMMC sold the largest parcel of the Evansville, Pennsylvania farm to a third party, with a permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms.  Less than a year later, EMMC sold the second parcel with the same permanent deed restriction.  The two parcels making up the Evansville, Pennsylvania farm, with an annual mushroom growing capacity of 15 million pounds, were sold at a collective loss of $ 137,000.

63.    In January 2002, EMMC purchased Gallo's Mushroom Farm ("Gallo's"), in Berks County, Pennsylvania.  Gallo's had an annual mushroom growing capacity of two million pounds.  Less than four months later, EMMC sold Gallo's at a loss of $77,500 with a permanent deed restriction prohibiting the conduct of any business related to the growing of mushrooms.

64.    In February 2002, EMMC agreed to pay $ 1 million to the owners of Ohio Valley Mushroom Farms for, among other things, a non-compete agreement, a right of first refusal to lease the mushroom growing operations, a right of first refusal to purchase the properties, and the right to record a deed restriction prohibiting the conduct of any business related to mushroom growing on the property for ten years. The EMMC did not lease or purchase the property, but filed the deed restriction on the Ohio Valley Farm, which had operated as a mushroom growing concern with annual capacity of nine million pounds.

65.    In March 2002, EMMC purchased the La Conca D'Oro mushroom farm in Berks County, Pennsylvania.  The La Conca D'Oro farm had an annual production capacity of approximately five million pounds.  EMMC sold the farm and the mushroom-growing equipment on the farm approximately three months later at a loss of $500,000.  Like the other

EMMC acquired properties, this land was sold with a deed restriction prohibiting anyone from conducting any business related to the growing of mushrooms on the property.

66.    In August 2002, EMMC purchased a ten-year lease option on the Amadio Farm in Berks County, Pennsylvania for $230,000.  The Amadio Farm had an annual mushroom production capacity of approximately five million pounds.  The owner of the property agreed with EMMC to the filing of a deed restriction on the property prohibiting anyone other than EMMC from conducting any business related to the growing of mushrooms for ten years.  EMMC never entered into a lease on the property.

67.    A s a result of the deed restrictions placed by EMMC on these six mushroom farms in the eastern United States, EMMC removed more than 42 million pounds of annual growing capacity from that region, or approximately 8% of the total capacity in the eastern United States.

68.    In addition to the farms in Pennsylvania, Georgia and Ohio, the Defendants also implemented the Supply Control campaign to buy mushroom farms to restrict mushroom production in other states.  For example, as part of its Supply Control program, EMMC acquired a farm in Hillsborough, Texas, which EMMC purchased to reduce and forestall the threat of a competitor, Stuart Thomas, from producing mushrooms in Texas.  As a result of EMMC's actions in various states, EMMC eliminated at least 50 million pounds of mushroom supply, if not more.  EMMC touted the success of the Supply Control Campaign to its membership claiming it had "[a]nnually taken over 50 million pounds out of production from facilities which could have easily been purchased and remained in production."

69.    The Defendants' purpose in entering into the purchase and lease transactions was to reduce or eliminate the agaricus mushroom growing capacity available to potential

17

independent competitors in the United States, thereby improving Defendants' ability to maintain the artificially-inflated price increases to which they had agreed.  Moreover, these land purchases and lease/option agreements did not, nor were they intended to, serve any legitimate or lawful purpose under Capper-Volstead, such as the promotion of growing or marketing the Defendants' mushrooms.

70.     In addition to the property transactions and deed restrictions to restrain agaricus mushroom supply alleged above, EMMC members supported and reinforced their scheme by: (a) collectively interfering with any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by EMMC; and (b) using collective and conspiratorial acts to pressure independent growers to join EMMC and the Defendants' unlawful conspiracy. Plaintiffs have yet to uncover all other actions taken by EMMC to restrict competition.

71.     In the mushroom-growing industry, growers frequently sell fresh mushrooms to each other to fill daily needs.  Because the EMMC members control over 60% of the national mushroom supply, and approximately 90% of the mushroom supply in the eastern United States, the EMMC members were able to use their collective strength to place pressure on non-EMMC members to force independent growers to join the EMMC cooperative (and thus the unlawful conspiracy to restrict the supply of mushrooms) or to refrain from selling mushrooms at lower prices that would undermine the unlawful conspiracy.  The EMMC members applied such pressure and coercion through various means, including but not limited to threatening and/or implementing a group boycott in which they would not sell mushrooms to other growers who needed them to meet short term supply needs and/or selling mushrooms to such independent growers at inflated levels.

72.     Through the collective boycotts and other collective efforts to penalize non-

EMMC members that threatened to undermine the Defendants' unlawful conspiracy, the

Defendants caused the artificial inflation of prices for not only the fresh agaricus mushrooms that

the Defendants sold, but also for the fresh agaricus mushrooms sold by non-EMMC growers.

73.     As a result of EMMC's violations, the acreage and facilities available to produce

mushrooms for American consumers was artificially reduced, and consumers were deprived of

the benefits of competition.

74.     All conditions precedent to this action have been performed or have occurred.

## PLAINTIFFS SUFFERED ANTICOMPETITIVE HARM FROM DEFENDANTS' UNLAWFUL CONSPIRACY

75.     Since Defendants' unlawful conspiracy began in 2001, Giant Eagle has purchased

its mushrooms from EMMC members in the following approximate amounts:

|       | Fresh       | Canned      |
|-------|-------------|-------------|
| 2001  | $6,756,000  | $677,000    |
| 2002  | $6,975,000  | $712,000    |
| 2003  | $6,656,000  | $595,000    |
| 2004  | $5,944,000  | $1,035,000  |
| 2005  | $5,807,000  | $944,000    |

Purchases have continued since 2005 and these figures will be updated in discovery.

76.     All of these purchases by Giant Eagle were made through Topco who, at all times

relevant hereto, acted as Giant Eagle's purchasing agent.  In addition, Topco purchased

mushrooms for other Topco members.  Topco's total purchases of mushrooms for Topco

members from EMMC members during the period 2001 through November 2004 aggregated

$46,819,000.

77.     As a result of Defendants' unlawful conduct, Plaintiffs were compelled to pay,

and did pay, artificially inflated prices for agaricus mushrooms.

78.     The overall effect of Defendants' unlawful agreement was to allow them to charge a higher price for agaricus mushrooms by excluding competitors and artificially constricting supply.

79.     Those prices were substantially greater than the prices that Plaintiffs would have paid absent the illegal conduct because (1) the price of agaricus mushrooms was artificially inflated by Defendants' illegal conduct; and/or (2) Plaintiffs were deprived of the opportunity to purchase competitively priced agaricus mushrooms.

80.     As a direct consequence of Defendants' unlawful conduct, Plaintiffs have sustained substantial losses and damage to their business and property in the form of overcharges.  The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

## CAPPER-VOLSTEAD AND ITS OHIO COUNTERPART DO NOT IMMUNIZE DEFENDANTS FROM THEIR UNLAWFUL CONDUCT

81.     EMMC is organized pursuant to Capper-Volstead.  Under Capper-Volstead and its Ohio counterpart, the Cooperative Agricultural Marketing Act of Ohio Rev. Code § 1729.70 (the "Cooperative Act"), farmers have limited immunity from the antitrust laws to act together voluntarily in "collectively processing, preparing for market, handling and marketing" their products, and "may take the necessary contracts and agreements to effect such purposes." Capper-Volstead and the Cooperative Act provide no immunity, however, for cooperative members to conspire to prevent independent, nonmember farmers from competing with the cooperative or its members.  In addition, as noted above, it is believed that one or some of the EMMC's members are not "farmers" within the meaning of Capper-Volstead, and therefore, they are not entitled to any antitrust immunity for their acts.

82.    The Supply Control campaign is not a joint activity protected by the exemption from the federal or Ohio antitrust laws created by Capper-Volstead and the Cooperative Act.

83.    Plaintiffs' injuries are caused by Defendants' unlawful conduct and not by any activity immunized from antitrust liability by Capper-Volstead and the Cooperative Act.

## GOVERNMENT INVESTIGATION AND JUSTICE DEPARTMENT'S ANTITRUST ACTION

84.    On December 16, 2004, the United States Department of Justice filed a complaint against EMMC, styled *United States of America v. Eastern Mushroom Marketing Cooperative, Inc.*, Civil Case No. 2: 04-CV-5829 (the "DOJ Complaint") in the United States District Court for the Eastern District of Pennsylvania challenging EMMC's Supply Control campaign as an agreement in restraint of trade in violation of Section 1 of the Sherman Act.  That same day, the Department of Justice filed a proposed consent decree that requires EMMC to stop buying mushroom farms only to shut them down, and to make farms it had previously shut down available to competing farmers.  That Final Judgment was subsequently entered on September 9, 2005.  Pursuant to 15 U.S.C. § 16(a), entry of that Final Judgment does not impair this action.

## FRAUDULENT CONCEALMENT

85.    At all times relevant hereto, Defendants affirmatively concealed their unlawful conduct from Plaintiffs.  Plaintiffs did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until approximately December 2004, when the Justice Department announced that it had filed a civil complaint against EMMC and that EMMC had consented to entry of a final judgment against it. Nor could Plaintiffs have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, attempted to confine information concerning the

21

identities of the combination and conspiracy's membership and concealed from public scrutiny their activities through various other means and methods designed to avoid detection.

86.    Defendants and their co-conspirators affirmatively concealed the existence of the violations alleged through the following actions, among others:

      a.    Conducting non-public meetings and communications in which the Defendants agreed upon and implemented the scheme set forth herein;

      b.    Avoiding references or discussion in public documents of the identities of EMMC's membership and the unlawful conspiracy and acts set forth herein;

      c.    Participating in non-public meetings and conversations to monitor and enforce adherence to the conspiracy; and

      d.    Falsely representing that EMMC members' prices were fair and competitive.

87.    As a result of Defendants' concealment, Plaintiffs assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs.  Plaintiffs exercised due diligence to learn of their legal rights, and, despite the exercise of due diligence, did not discover and could not have discovered the antitrust violations alleged above at the time they occurred.

88.    In addition, due to Defendants' continuing violations of federal antitrust laws and the speculative nature of the damages to Plaintiffs, Plaintiffs assert the tolling of any applicable statute of limitations with respect to any claims and rights of action that Plaintiffs have as a result of the unlawful contract, combination, and conspiracy alleged in this Amended Complaint.

## COUNT I
### (Restraint of Trade in Violation of Section 1 of the Sherman Act 15 U.S.C. § 1)
### (Against All Defendants)

89.    Plaintiffs repeat and reallege all preceding paragraphs of this Complaint as if fully set forth herein.

90.    Agaricus mushrooms, fresh agaricus mushrooms and canned agaricus mushrooms are relevant product markets or submarkets within the meaning of Section 1 of the Sherman Act, 15 U.S.C. § 1. The United States and the eastern United States constitute relevant geographic markets or submarkets within the meaning of Section 1 of the Sherman Act.

91.    From at least May 1, 2001, and continuing to date, the Defendants combined and conspired to unreasonably restrain competition in the market or markets for agaricus mushrooms in the United States in violation of 15 U.S.C. § 1.

92.    To form and effectuate this conspiracy, EMMC and its members did the following things, among others:

        a.    collectively funded the Supply Control campaign;

        b.    sold four properties with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

        c.    entered agreements with nonmembers to place deed restrictions on two properties for which the cooperative purchased lease options;

        d.    filed deed restrictions on two properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

        e.    supported and reinforced the scheme by: (i) collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (ii) using collective and conspiratorial acts to pressure independent growers to join the EMMC and the Defendants' anticompetitive scheme.

93.     Defendants are or may not be entitled to immunity from the antitrust laws under Capper-Volstead, as it is believed that one or some of the EMMC members are not "farmers" within the meaning of Capper-Volstead.

94.     In addition, the Supply Control campaign and the other unlawful conduct alleged herein are not joint activities that are protected by the exemption from the antitrust laws created by Capper-Volstead.  Under Capper-Volstead, farm cooperatives are not immune from antitrust liability when they engage in exclusionary practices, or suppress competition with non-members, which is what Defendants did here.  By eliminating mushroom supply from non-EMMC members, and/or using collective efforts to penalize non-EMMC members that charged lower prices, the Defendants suppressed competition from growers that were not members of the cooperative.

95.     There was no legitimate business justification and/or the scheme and conspiracy among Defendants. Moreover, the land purchases and lease/option agreements did not, nor were they intended to, serve any legitimate or lawful purpose under Capper-Volstead, such as the promotion of growing or marketing the Defendants' mushrooms.  Defendants' scheme, collusion, agreements and conspiracy alleged herein have enabled Defendants to maintain prices for agaricus mushrooms at artificially high levels.

96.     As a direct and proximate result of the unlawful conduct of Defendants in restraining competition in the sale of agaricus mushrooms, Plaintiffs have been injured in their business and property in that they paid more for fresh and canned agaricus mushrooms than they otherwise would have paid in the absence of Defendants' unlawful conduct.

97.     The price for agaricus mushrooms will remain artificially high for an indefinite period into the future due to the long lead time needed to start a mushroom farm and other barriers to entry.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request:

a.      That Defendants' unlawful combination and conspiracy as set forth in Count I of this Complaint be adjudicated and decreed a *per se* violation of the Sherman Act, 15 U.S.C. § 1 and an unreasonable restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1;

b.      That Plaintiffs recover damages against Defendants, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

c.      That Plaintiffs be awarded their expenses and costs of prosecuting this action, including reasonable attorneys' fees and experts' fees and costs to the extent provided by law;

d.      That Plaintiffs be awarded pre-judgment and post-judgment interest at the highest legal rate allowable by law;

e.      That this Court permanently enjoin all continuing and future unlawful activity by Defendants in violation of the antitrust laws; and

f.      That Plaintiffs be awarded such additional relief as this Honorable Court may deem just and proper.

## COUNT II
### (Monopolization or Attempted Monopolization in Violation of Sherman Act Section 2)
### (Against Defendant EMMC)

98.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth at length.

99.   At all relevant times, Defendant EMMC possessed or attempted to acquire monopoly power in the relevant market -- i.e., the market for agaricus mushrooms in the United States and/or the market for agaricus mushrooms in the eastern United States.

100.   During the relevant period, Defendant EMMC violated section 2 of the Sherman Act, 15 U.S.C. § 2, by willfully and unlawfully acquiring, maintaining, and/or attempting to acquire or maintain monopoly power by, inter alia:

    a.    collectively funding the Supply Control campaign;

    b.    selling four properties with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

    c.    entering into agreements with nonmembers to place deed restrictions on two properties for which the cooperative purchased lease options;

    d.    filing deed restrictions on two properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

    e.    supporting and reinforcing the scheme by: (i) collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (ii) using collective and conspiratorial acts to pressure independent growers to join the EMMC and the Defendants' anticompetitive scheme.

101.   As set forth herein, Defendant EMMC used its illegal monopoly power to suppress competition and harm Plaintiffs by enacting an overarching, illegal scheme to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels, the prices of agaricus mushrooms that were sold, distributed or obtained in the United States.  Alternatively, if it is determined that Defendant EMMC has not yet secured monopoly power, its conduct constitutes attempted monopolization which has harmed Plaintiffs and poses a dangerous possibility of success.  Through this illegal conduct, Defendant EMMC has violated section 2 of the Sherman Act.

102.   These illegal practices of Defendant EMMC have resulted in continuing and

accumulating harm to Plaintiffs by allowing Defendant EMMC and its members to affect, fix, raise, maintain and/or stabilize at artificial and non-competitive levels the prices at which agaricus mushrooms were sold, distributed or obtained in the United States.  The continuing and accumulating harm suffered by Plaintiffs includes being overcharged for agaricus mushrooms as a result of Defendant EMMC's monopoly or attempted monopoly.

103.    Acts of monopolization or attempted monopolization such as those of Defendant EMMC are not activities that are protected by the exemption from the antitrust laws created by Capper- Volstead.  Under Capper-Volstead, farm cooperatives are not immune from antitrust liability when a member or members of the cooperative are not "farmers" within the meaning of Capper-Volstead.  One or some of the EMMC members are not "farmers" within the meaning of Capper-Volstead.  Additionally, under Capper-Volstead, farm cooperatives are not immune from antitrust liability when they engage in exclusionary practices, monopolize trade or suppress competition with non-members, which is what Defendants did here.  By eliminating mushroom supply from non-EMMC members, and/or using collective efforts to penalize non-EMMC members that charged lower prices, the Defendants suppressed competition from growers that were not members of the cooperative.

104.    There was no legitimate business justification for the willful acquisition, maintenance, and/or attempted acquisition or maintenance of monopoly power by Defendant EMMC.  Defendants' scheme, collusion, agreement and conspiracy alleged herein has enabled Defendant EMMC and its members to maintain prices for agaricus mushrooms at artificially high levels.

105.    As a direct and proximate result of the Defendant EMMC's willful acquisition,

maintenance, and/or attempted acquisition or maintenance of monopoly power, Plaintiffs were injured in their business or property because competition in the relevant markets was substantially foreclosed. Without limiting the generality of the foregoing, Plaintiffs have been forced to pay higher prices for agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request:

a.   That Defendants' unlawful combination and conspiracy as set forth in Count II of this Complaint be adjudicated and decreed a violation of the Sherman Act, 15 U.S.C. § 2;

b.   That Plaintiffs recover damages against Defendant EMMC, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

c.   That Plaintiffs be awarded their expenses and costs of prosecuting this action, including reasonable attorneys' fees and experts' fees and costs to the extent provided by law;

d.   That Plaintiffs be awarded pre-judgment and post-judgment interest at the highest legal rate allowable by law;

e.   That this Court permanently enjoin all continuing and future unlawful activity by Defendant EMMC in violation of the antitrust laws; and

f.   That Plaintiffs be awarded such additional relief as this Honorable Court may deem just and proper.

## COUNT III
### (Violation of the Clayton Act § 7 – Unlawful Acquisition)
### (Against All Defendants)

106.    Plaintiffs repeat and reallege all preceding paragraphs of this Complaint as if fully set forth herein.

107.    Defendants unlawfully acquired the assets of their direct competitors, as detailed above, thereby substantially lessening competition in a relevant market—i.e., the market for fresh and canned agaricus mushrooms in the United States and/or the market for fresh and canned agaricus mushrooms grown in the Eastern United States.  This acquisition violated Section 7 of the Clayton Act, 15 U.S.C. § 18.

108.    By reason of the antitrust violations of the Defendants alleged herein, the prices of the mushrooms purchased were higher than they would have been but for Defendants' violation of antitrust laws.

109.    Defendants' acquisition and holding of competitor mushroom farms violated Section 7 of the Clayton Act.

110.    As a direct and proximate result of the Defendants' acquisition of their competitors, Plaintiffs and other members of the Class were injured in their business or property by the substantial lessening of competition in the relevant markets.  Without limiting the generality of the foregoing, Plaintiffs have been forced to pay higher prices for fresh and canned agaricus mushrooms in the relevant market than they would have paid in the absence of Defendants' unlawful conduct.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request:

a.    That the acts alleged herein be adjudged and decreed unlawful acts in violation of Section 7 of the Clayton Act;

b.    That Plaintiffs recover damages against Defendants, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

c.    That Plaintiffs be awarded their expenses and costs of prosecuting this action, including reasonable attorneys' fees and experts' fees and costs to the extent provided by law;

d.    That Plaintiffs be awarded pre-judgment and post-judgment interest at the highest legal rate allowable by law;

e.    That this Court permanently enjoin all continuing and future unlawful activity by Defendants in violation of the antitrust laws; and

f.    That Plaintiffs be awarded such additional relief as the Court may deem proper.

## COUNT IV
### (Violation of the Ohio Valentine Act)
### (Against All Defendants)

111.    Plaintiffs repeat and reallege all preceding paragraphs of this Complaint as if fully set forth herein.

112.    From at least May 2001, and continuing to date, Defendants combined and conspired to prevent, forestall and restrict competition from independent mushroom producers in violation of The Ohio Valentine Act, Ohio Rev. Code §§ 1331.01, 1331.04-06, and 1331.08.

113.    To form and effectuate this conspiracy, EMMC and its members did the following things, among others:

a.    collectively funded the Supply Control campaign;

30

b.     sold four properties with permanent deed restrictions forbidding the conduct of any business related to the production of mushrooms;

c.     entered agreements with nonmembers to place deed restrictions on two properties for which the cooperative purchased lease options;

d.     filed deed restrictions on two properties prohibiting the conduct of any business related to the production of mushrooms for ten years; and

e.     supported and reinforced the scheme by: (i) collectively interfering with, penalizing and retaliating against any non-EMMC growers that sought to sell at prices that were below the artificially-inflated prices set by the EMMC; and (ii) using collective and conspiratorial acts to pressure independent growers to join the EMMC and the Defendants' anticompetitive scheme.

114.    The campaign by EMMC and its members to control the supply of mushrooms is not a joint activity protected by the exemption from the Ohio antitrust laws created by the Cooperative Agricultural Act of Ohio, Ohio Rev. Code § 1729.70.

115.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have paid (and will continue to pay) more for fresh and canned agaricus mushrooms purchased in Ohio than they otherwise would have paid in the absence of Defendants' unlawful conduct.

116.    The price for agaricus mushrooms will remain artificially high for an indefinite period into the future due to the long lead time needed to start a mushroom farm and other barriers to entry.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request:

a.      That Defendants' unlawful combination and conspiracy as set forth in this
        Complaint be adjudicated and decreed a violation of the Ohio Valentine
        Act, Ohio Rev. Code §§ 1331.01, 1331.04, and 1331.05;

b.      That Plaintiffs recover damages against Defendants, jointly and severally,
        in an amount to be doubled in accordance with the antitrust laws pursuant
        to Ohio Rev. Code §1331.08;

c.      That Plaintiffs be awarded their expenses and costs of prosecuting this
        action, including reasonable attorneys' fees and experts' fees and costs to
        the extent provided by law;

d.      That Plaintiffs be awarded pre-judgment and post-judgment interest at the
        highest legal rate allowable by law;

e.      That this Court permanently enjoin all continuing and future unlawful
        activity by Defendants in violation of the antitrust laws; and

f.      That Plaintiffs be awarded such additional relief as the Court may deem
        proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this complaint so triable.


Dated:  June 14, 2007

Respectfully submitted,

Lawrence T. Hoyle, Jr.
 PA ID No. 02926
Arleigh P. Helfer III
 PA ID No. 84427
HOYLE FICKLER HERSCHEL & MATHES, LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 981-5700

*Local Counsel for Plaintiffs*

Bernard D. Marcus
 PA ID No.01293
 Scott D. Livingston
 PA ID No. 60649
 Moira Cain-Mannix
 PA ID No. 81131
 MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
301 Grant Street
Pittsburgh, PA  15219
(412) 338-4690

*Counsel for Plaintiff Giant Eagle, Inc.*

Victor E. Grimm
Scott M. Mendel
BELL BOYD & LLOYD LLC
70 West Madison Street, Suite 3300
Chicago, IL 60602
(312) 327-1121

*Counsel for Plaintiff Topco Associates, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Amended Complaint was served upon the following in the manner indicated this 14th day of June, 2007:

**BY HAND DELIVERY:**

**Counsel for M.D. Basciani and Sons, Inc.:**

James J. Rohn, Esq.
Patricia M. Hamill, Esq.
Kevin D. Kent, Esq.
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102

**Counsel for Kitchen Pride Mushroom Farms, Inc.:**

Francis Patrick Newell, Esq.
fnewell@harkinscunningham.com
Harkins Cunningham LLP
2800 One Commerce Square
2005 Market Street
Philadelphia, PA  19103-7042

**Counsel for Defendant Harvest Fresh Farms, Inc.:**

Eric A. Sitarchuk
sitar@ballardspahr.com
Ballard, Spahr, Andrews, & Ingersoll, LLP
1735 Market Street -- 51st Floor
Philadelphia, PA 19103
215-665-8500

**Counsel for Defendants, Eastern Mushroom Marketing Cooperative, Inc., Phillips Mushroom Farms, LP., Kaolin Mushroom Farms, Inc., Giorgi Mushroom Co., Giorgi Foods, Inc., Cardile Mushrooms, Inc., Cardile Bros. Mushrooms Packaging, Monterey Mushrooms, Inc., Franklin Farms, Inc., Modern Mushroom Farms, Inc., Gino Gaspari & Sons, Inc., Oakshire Mushroom Farm, Inc., Brownstone Mushroom Farms, Inc., Robert A. Ferranto, Jr. t/a Bella Mushroom Farms, Country Fresh Mushroom Co., Forrest Mushroom, Inc., LRP Mushrooms, Inc., Leone Pizzini & Sons, Inc., Louis J. Marson Jr. Inc., SH Guest, t/a Kennett Shitake,  Mario Cutone Mushroom Co., Inc. and/or M. Cutone Mushroom Co., United Mushroom Farm Cooperative, Inc., John Pia, and Michael Pia:**

H. Laddie Montague, Esq.
hlmontague@bm.net
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103

-and-

William A. DeStefano, Esq.
destefanowa@bipc.com
Buchanan Ingersoll, P.C.
1835 Market Street
14th Floor
Philadelphia, PA  19103-2985

**Unrepresented Defendants (via regular mail or via service of process):**

Masha & Toto, Inc. t/a M&T Mushrooms
519 Hillendale Road
Avondale, PA  19311

Mushroom Alliance
c/o CT Corporation System
520 Pike Street
Seattle, Washington 98101

W&P Mushroom Inc.
4300 Barnsley Chrome Road
Oxford, PA  19363

J-M Farms, Inc.
7001 S. 580 Road
Miami, OK 74354

To-Jo Fresh Mushrooms, Inc.
and/or To-Jo Mushrooms, Inc.
974 Penn Green Road
Avondale, PA  19311

Sher-Rockee Mushroom Farms, LLC
170 Sher-Rockee Lane

Lincoln University, PA  19352

C & C Carriage Mushroom Co.
1340 Newark Road
Toughkenamon, PA  19374

South Mill Mushroom Sales, Inc.
649 West South Street
Kennett Square, PA  19348

Creekside Mushrooms Ltd.
One Moonlight Drive
Worthington, PA  16262

South Mill Mushroom Sales, Inc.
649 West South Street
P.O. Box 1037
Kennett Square, PA 19318

Cardile Brothers Mushroom Packaging, Inc.
PO Box 707
Avondale, PA 19311

Arleigh P. Helfer III